Judge Ewing
delivered the Opinion of the Court.
On the 25th of December, 1824, the decedent, William Stroud, and the complainant Barnett entered into an article of agreement, by which it was agreed, that said Barnett had advanced to said Stroud one hundred and fifty dollars, in Kentucky and Commonwealth’s bank paper; and said Stroud had placed in the possession of said Barnett, a negro woman by the name of Amy, to remain with him, and work for the use of said money, until the 25th of December thereafter, or so long thereafter as said Stroud should delay to repay said money; and it was further stipulated that if said girl should die before the said money was refunded, the loss should be Stroud’s. Said girl became pregnant before the- year was out, and was taken home by Stroud, to be after-wards returned, and was never after returned.
Said Stroud died, and administration was granted, on his estate to Thomas Barnett and Archibald Lindsay; *392 who sold, all the personal estate that came to their hands, also, the negro woman Amy and her child, and applied the whole to the payment of the debts of the decedent.
Where an adm’r ■or executor, has paid over the estate to distributees, without having satisfied all -of the decedent’s debts — chancery-may take jurisdiction, upon the bill of a creditor «of the estate, against the adm’r (for ex’or) — who is> ia fact= ® with the dis-^“^hf has funds of the es^adeére^may be rendered for ^ ^ei-XXfendants, accor^active * habilishau be done, a succession of voided.
*392 There were other slaves left, and a small tract of barren land of little or no value.
A bill was then filed by some of the heirs, against the administrators and other heirs, and a decree obtained, directing the sale of the slaves remaining, for the purpose of a division. James Bradley was appointed a ■commissioner to sell the slaves, and divide the proceeds among the heirs, some of whom were non-residents; and having sold the same, and made partial distribution, held a portion of the funds, the proceeds of said sale, in his hands for distribution among other of the heirs.
At this stage of the proceedings, the complainant, William Barnett, who had intermarried with one of the heirs of Stroud, filed his bill against said administrators and heirs, and said Bradley, charging the administrators with having sold said Amy and child, as well as all the personal estate, and applying the proceeds to the payment of debts, and praying a decree for the money due upon said article, and that the money in the hands of Bradley might be applied to its payment, and enjoining and restraining Bradley from making distribution of it as directed by the said decree.
A decree was rendered against said heirs, de bonis propriis, and, in their default against said Bradley, for one hundred and twenty five dollars, and costs, in notes on the Bank of the Commonwealth, and execution awarded.
The first question that will be considered, is, had the chancellor jurisdiction of the case? We think he had.
The slaves decreed to be sold, were assets in the hands of the administrators, and should rightfully have been applied to the payment of the complainant’s debt. Executors and administrators are, by implication of law, trustees of the estate of their testator or intestate, and the funds in their hands are trust funds, first for the payment of debts, and afterwards for distribution. 2 Maddock's Chy. 126: 1, 578-9, &c. And frauds, accidents trusts are peculiarly the subjects ef equity jurisdiction. *393 When administrators of executors have abused their trust, by making distribution of the assets among the heirs or legatees, without first paying the debts, we see no principle of equity which would preclude the chancellor from taking cognizance of the ease, in analogy to the jurisdiction ordinarily exercised by him, over trustees and trust funds, in other cases, and following the trust fund into the hands of the legatees or heirs, and •directing its application to the first objects of the trust, —the payment of debts, or Tendering the executor or administrator liable for a breach of his trust. By such ■a proceeding the administrators and heirs all being brought before the court, and compelled to make discovery of assets, more full and complete justice can be done, and the great delay, vexation and circuity of action, of first suing the administrator at law, and then suing for a devastavit, and driving him to a suit against the heirs for a return ox the funds paid over to them, be avoided. We are therefore inclined to think, that in all cases where the administrator has made distribution of the estate among the heirs, that a creditor whose debt has not been paid, may proceed in chancery, jointly ■against him and the heirs, for a recovery of his debt. And this mode of proceeding is sanctioned by authority, •as well in England, as the Virginia courts.
But in a state of case like the present, where a part of the distributees are non-residents, and the funds which are sought to be applied to the payment of the complainant’s debt, are the proceeds of the sale of property which was assets in the hands of the administrator,
■and sold under the decree of the Chancellor, and are in the hands of a resident commissioner, appointed by the Chancelloi-, and under his control, there can be no doubt that equity may take jurisdiction of the case, and direet the application of the funds to the first purposes of the trust — the payment of the debts of the decedent. And having taken jurisdiction for this purpose, and having all parties, the administrators and distributees, before the court, may retain jurisdiction, to do full and compíete justice to the complainants, in ease the funds in *394 the commissioners hands, shall not be sufficient to pay his debt.
The act of 1824, to prevent the scaling of debts payable in Commonwealth’s or Ky. bank notes, does not apply where there is any other stipulation connected with the contract — as,in this case, where the receipt given for the notes (to be repaid) contains the terms on which a slave is pledged for the use and security of the loan.— The value of the notes when the obligation is due, is all that can ibe recovered in such cases.
'Bill by a credit-tor of a decedent, against the .adm’r — who had distributed without paying the debt, and the Sieirs,-and a commissioner who lad funds of ¡the estate m ins hands — a decree against the heirs jointly is erro•neous; so if it ■gainst°the adm’r" it should be afendants!1 to be ■paid — 'first, by out ofthe'assets, and, by the com-the funds * in his hands; 2nd, by the heirs — each his due proporfn°“’the* amount oí his share re-the'adm^'out'S’ his ma estate, “aty ofsa ede_ vastavit..
*394 But there are manifest errors in the details of the decree.
First. The court should not have rendered a decree for Commonwealth’s paper. The statute of 5th January, 1824, authorizing the recovery of Bank notes specifically, does not apply to a case of this kind. That act only applies to contracts, for the payment of Bank notes, of a particular description, and does not embrace 'contracts stipulating the performance of other things, as has been repeatedly settled by this Court. 6 J. J. Marshall 11; 1 Ib. 6; 7 Monroe, 224; 3 Ib. 156; 6 Ib. 545—6—7, 5 Ib. 317.
Now, the article which forms the foundation of the complainant’s recovery, not only acknowledges the advancement of Bank paper, on the part of Stroud, but also stipulates that a negro woman is placed in the complainant’s possession, to work for the use of it, and also in case of her death before the money is refunded, that the loss shall be his.
'Second. It was error to decree against the heirs jointly. Such decree might fall upon one only, in case of the non-residency or insolvency of the other heirs, and exceed the amount which was paid over to him by the commissioner.
It was also erroneous to let out the administrator. 'He has abused his trust, and committed a devastavit, by permitting the funds of the estate to be taken out of ** ® his hands for distribution, without paying the complain-an^s debt and should be made personally responsible to 7 1 J r the complainant for any balance which cannot be made out °f estate* But — as each heir would be bound to refund to him his equal share of the amount made out °f him, not exceeding the amount received in course of distribution — it would be equitable to decree each distributee to pay in satisfaction of the complainant’s debt, that amount, provided the funds in the hands of Bradley the commissioner, not yet -distributed, shall not be sufficient to pay the said debt. The Circuit Court should . i ^ therefore ascertain the value ox the paper advanced, *395 when reduced to a specie standard, at the time when advanced, and should calculate the interest thereon up to the decree, and after deducting the value of the slaves hire, estimated by the same standard, decreed that the administrator and heirs pay the same, together with costs, first out of the assets in the hands of the administrator, if any, if not, out of the estate descended to-the heirs;, and direct the commissioner to pay the same out of the funds in his hands, if sufficient, if not, that each of the distóbutees pay, in satisfaction of the balance, his equal share of the same, provided his share shall not exceed the amount received by him in course of distribution; and that in default of any or all of said heirs making said payment, that execution issue against said adminis. trator and heirs, to be levied first of the assets in the hands of the administrator, if any, if not, then of the estate descended, if sufficient, if not, of the estate of the administrator in his proper person..
It is therefore decreed by the court, that the decree of the Circuit Court be reversed, and the cause remanded that a decree be rendered not inconsistent with the principles here settled.